FRED PRONOVOST and Oneisine Cossette et al. v. ALFRED BRUNETTE, as a Director of School District No. 40.

(162 N. W. 300.)

**Legislature — public schools — under control of — school boards — powers — conferred by statute.**

1. The public schools of North Dakota are under the control of the legislature, and the respective school boards have no other powers than those which the statutes confer upon them.

**Public schools — common-school districts — legislative policy — school buildings — district — adequate needs of — when supplied — school boards — powers of — renting other building.**

2. The legislative policy in North Dakota is that the public schools in the common-school districts of the state shall be maintained in buildings which are owned by the public. Where a common-school district already owns a school building which is adequate to the needs of the district, and there are not nine children residing 2½ miles therefrom so that additional accommodation is needed for such persons, it has no authority or power to lease another building and to remove the school thereto.

Opinion filed March 3, 1917.

Application for a writ of mandamus to compel the removal of a public school.

Appeal from the District Court of Cass County, *Charles A. Pollock,* J.

Judgment for plaintiffs. Defendant appeals.

Reversed.

Statement of facts by Bruce, Ch. J.

This is an appeal from a peremptory writ of mandamus issued on the petition of all of the directors of school district No. 40, with the

exception of the defendant and on behalf of the said district, commanding the defendant Alfred Brunette as follows:

"That immediately after the receipt of this writ you do permit the removal of the school in school district No. 40, Cass county, North Dakota, from the schoolhouse formerly used as a school building in said district, to a room in St. Joseph's convent in said district, as provided for by a resolution of the school board of said school district, adopted September 30, 1916; and that you do permit the plaintiffs, Fred Pronovost and Oneisine Cossette, as directors of said school district, to remove the school books, supplies, and records from said schoolhouse building to the room in St. Joseph's Convent aforesaid, and that you do give the said plaintiffs, Pronovost and Cossette, access to the schoolhouse aforesaid for the purpose of carrying out the direction of the election held in said district on September 27, 1916, and the resolution of the school board of said district, adopted September 29, 1916, directing the transfer of said school from the schoolhouse aforesaid to the said room in St. Joseph's Convent in said district; and that you do carry out the transfer of said school from the schoolhouse aforesaid to the room in St. Joseph's Convent herein referred to."

The findings of fact, which seem to be undisputed, are that Oneisine Cossette and the defendant Alfred Brunette are the duly elected and qualified directors of the district; that on and prior to the 2d day of October, 1916, school was taught and maintained in said district in a schoolhouse which had been theretofore erected therein, and that said school was the only public school which was maintained and conducted in the district, that prior to the 27th day of September, 1916, a resolution was passed by the school board providing for the calling of a special election "to vote upon the question of whether or not the school in school district No. 40, Cass county, North Dakota, shall be changed and removed from the present schoolhouse to a room in St. Joseph's Convent in the same district;" that said room or building adjoined St. Joseph's Academy, which is and at all times herein referred to was located within said school district and within a distance of about 2 miles, and less than $2\frac{1}{4}$ miles from the residence of the defendant herein; that the defendant filed a written protest against the calling of said special election; that thereafter and on the 27th day of September, 1916, the election was held and thirty-one votes were cast, of which twenty-eight were in favor of

36 N. D.—19.

the removal and three were against it; that thereafter, and in order to carry out the result of the election, a special meeting of the board of school directors was held at which the removal was directed; that when the removal was sought to be effected, the defendant, who, as a director of said school district and as president of the board of directors, had the keys of the old school building in his possession and the control and custody of the books and supplies, refused and still refuses to permit the removal of the said supplies, etc., and to give the plaintiffs access to the old building; that the said St. Joseph Academy is a Catholic institution and said academy, together with the school room and building to which it was voted to remove the school, is owned by St. Benedict's Church, a corporation, which is a religious corporation of the Catholic faith, and is located upon ground owned by said corporation; that it is the intention of plaintiffs, and they propose, to conduct said school in said building adjoining St. Joseph Academy as provided by law for the conduct of public schools of the state of North Dakota, under the supervision and control of the county superintendent of schools and the state superintendent of schools, and under the supervision and control of the board of directors of said school district; that said school will be conducted as a nonsectarian school, free from any and all influences and control or domination whatsoever of the Catholic Church, its priests, its officers, or agents; that the teachers which will be employed therein will have the qualifications and license required by law for teachers of public schools within the state, and will be entitled, by law, to teach therein, and that said school will, in all things, be conducted as a public school the same as other public schools are conducted throughout the state of North Dakota, and the same as this school has heretofore been conducted; that said room and building in which said school is to be conducted is a building approximately 20x32 and is one story in height, of frame construction, and is entirely separate and independent from said St. Joseph Academy, except that it is connected therewith by a passageway or hall; that it has an outside entrance leading directly into said room or building; that it is steam heated and gas lighted by a system used in connection with the other buildings belonging to said St. Benedict's Church; that plaintiffs propose and expect to make a lease covering a term of years for said building by which the school district shall be given an exclusive right to the occupancy and control of the said building to be used for the purpose of

conducting a public school therein; that in the answer and return of said defendant the regularity and legality of the proceedings leading up to said election and of the election are not attacked or questioned.

*A. T. Cole,* for appellant.

The purpose and intent of the Constitution and of the enabling act is very plain, to keep public schools free from sectarian control, and this means keeping them free from such influences, and the provisions of the Constitution and enabling act are mandatory and prohibitory unless by express words they are declared to be otherwise. N. D. Const. art. 8 §§ 147, 152; Dakota Synod v. State, 2 S. D. 366, 14 L.R.A. 418, 50 N. W. 632.

School boards have only such powers and authority as are conferred by the legislature. Dakota Synod v. State, supra; State ex rel. Freeman v. Scheve, 65 Neb. 853, 59 L.R.A. 927, 91 N. W. 846, 93 N. W. 169; State ex rel. Weiss v. District Board, 76 Wis. 177, 7 L.R.A. 330, 20 Am. St. Rep. 41, 44 N. W. 967.

*Fowler & Green,* for respondents.

There is nothing in this case which would render this school subject to "sectarian control," nor is there anything in the record to indicate a violation of the Constitution or laws of the state. N. D. Const. §§ 147, 152.

It is only upon the theory *per se* that the school would not be "free from sectarian control," that appellant's contention can be sustained, for it must be presumed that the directors will perform their duties in a lawful manner. Millard v. Board of Education, 121 Ill. 297, 10 N. E. 670.

The school here in question is a public school, under public control and maintenance, and any appropriation of public money to support it is not an appropriation in support of a "sectarian school." Money paid as rental for a building belonging to a sectarian church, a corporation, which building is used and rented for public, common-school purposes, is surely not money spent in aid of a sectarian school. It is like renting the building for such lawful purpose from any private citizen. Black's Law Dict. State ex rel. Dick v. Kalaher, 145 Wis. 243, 129 N. W. 1060; Clinton v. Worcester Consol. Street R. Co. 199 Mass. 279, 85 N. E. 507.

The owner of the building is merely a religious corporation. It owns

the building and rents it to the school district to be used, and it is used, for public-school purposes. Hackett v. Brooksville Graded School Dist. 120 Ky. 608, 69 L.R.A. 592, 117 Am. St. Rep. 599, 87 S. W. 792, 9 Ann. Cas. 36; Hysong v. School Dist. 164 Pa. 629, 26 L.R.A. 203, 44 Am. St. Rep. 632, 30 Atl. 482.

BRUCE, Ch. J. (after stating the facts as above). Various constitutional questions have been raised in this case. It is not necessary, however, to consider or to discuss any of them, as we are satisfied that the acts sought to be enforced are without statutory authority. We are satisfied, indeed, that both the order of the school board and the election were void, and that the lease of the new building and the removal of the school thereto were absolutely unwarranted by the law and outside of the power of the directors.

It is a self-evident proposition that the public schools of the state are under legislative control, and that school directors have no powers, except those which are conferred by the statutes upon them. A perusal of §§ 1174, 1184, 1185, 1187, 1188, 1192, 1332, and 1461 of the Compiled Laws of 1913 will, we believe, make it apparent to all that the only instance in which a common-school board may lease a building is in the case where there are nine children of school age who reside 2½ miles from the schoolhouse already erected, and when an additional school is needed for such persons. Even in such a case there must be a petition signed by the persons charged with the support, and having the custody and care of the children. It is apparent that in every other case it was the purpose of the legislature that the public schools in the so-called common-school districts of the state should be exclusively conducted in buildings which are not only controlled by, but which are owned by, the public. This intention, we believe, to be clear.

The only justification, indeed, for the action of the board which was taken, and for the election which was held, was § 1184, of the Compiled Laws of 1913. This section provides that: "whenever in the judgment of the board it is desirable or necessary to the welfare of the schools in the district, or to provide for the children therein proper school privileges, or whenever petitioned to do so by one-third of the votes of the district, the board shall call an election of the voters in the district at some convenient time and place fixed by the board, to vote upon the question

of the *selection, purchase, exchange or sale of a schoolhouse site, of the erection, removal or sale of a schoolhouse.* Said election shall be conducted and the votes canvassed in the same manner as at the annual election of school officers."

Section 1185 also provides: "Three notices of the time, place and the purpose of such election shall be posted in three of the most public places in the district at least fourteen days prior to such meeting. If a majority of the voters present at such meeting shall by vote *select a schoolhouse site* or shall be in favor of the *purchase, exchange or sale of the schoolhouse,* as the case may be, then the board shall proceed to carry out the decision of the voters of the district, provided it shall require a vote of two thirds of the voters present and voting at such meeting to order the removal of the schoolhouse, and such schoolhouse so removed cannot again be removed within three years from the date of such meeting; and, further, if the question of removing the schoolhouse fails to carry, then the question of removing such schoolhouse cannot again be raised within one year, etc."

It is perfectly clear that these sections only authorize and relate to the selection, purchase, or sale of a schoolhouse *site,* or the erection, removal, or sale of a *schoolhouse.*

Section 1188 of the Compiled Laws of 1913 provides as follows: "If a petition signed by the persons charged with the support and having the custody and care of nine or more children of school age, all of whom reside not less than 2½ miles from the nearest school, is presented to the board, asking for the organization of a school for such children, the board shall organize such school and employ a teacher therefor, if a suitable room for such school can be leased or rented at some proper location not more than 2½ miles distant from the residence of any one of such children, and if no suitable room for such school can be leased or rented, the board shall call a meeting of the voters of the district for the selection and purchase or erection of a schoolhouse, as provided for in § 1185. If at such meeting no such site is selected, or if it is not voted to erect or purchase a schoolhouse for such school, the board shall select and purchase a schoolhouse site and erect, purchase or move thereon a schoolhouse at a cost of not more than $1,200 for such schoolhouse and furniture therefor; provided, that the provisions of this section shall not apply

in instances where schools have been consolidated in accordance with the provisions of § 1190."

This section, as we have before stated, merely applies to cases where there are students living 2½ miles from the established school, and some other provision is necessary for their accommodation. There is not, indeed, to be found anywhere in the statutes any authorization for the leasing of a building for school purposes when (as the record shows in the case at bar) there is already in the common-school district a school which is owned by the district, which is within 2½ miles of the students, and which is adequate to the needs of the district.

The judgment of the District Court, therefore, must be reversed, and the trial court is directed to enter an order quashing its mandatory writ.