[File No. 6419.]

J. H. BATTY, Respondent, v. BOARD OF EDUCATION OF THE CITY OF WILLISTON, STATE OF NORTH DAKOTA, a Public Corporation, and J. N. Urness, Superintendent of Williston Schools, Appellants.

(269 N. W. 49.)

Opinion filed September 19, 1936.

*Ivan Metzger,* for appellants.

*Walter O. Burk,* for respondent.

NUESSLE, J. This is an appeal from an order of the district court sustaining a demurrer to the defendants' answer. The material facts as we glean them from the pleadings are substantially as follows: The board of education of the city of Williston is a special school district, organized pursuant to the provisions of Article 9, chapter 12 of the Political Code (§§ 1229–1285, inclusive, Comp. Laws 1913). The defendant, J. N. Urness, is the superintendent of the high school conducted therein. The plaintiff, J. H. Batty, is a resident in and a patron of the school district. His minor son (age 18 on July 17, 1935) is enrolled in and attending the high school. In 1931, the board adopted a resolution providing that ". . . all high school students who are residents of Williston Special School District No. 1 will be required to pay tuition at the rate of $7.50 for each half unit of credit, after four years attendance of high school, with the following exceptions allowed." (These exceptions are not material and pertinent in the instant case and therefore need not be stated.)

Plaintiff's son attended the high school for a period of four full years but did not complete the course of study required to graduate. Defendants in their answer allege that this failure was because of idle-

ness and indifference on his part. Thereafter he sought to continue as a student in the high school but the defendants, enforcing the regulation above set forth, refused him permission to do so unless and until the tuition charge should be paid. Thereupon plaintiff began the instant action.

The district court holding that the regulation in question was an unreasonable one and that the board of education had no power to make or enforce it, sustained the plaintiff's demurrer. The defendants thereupon perfected the instant appeal.

The defendants on this appeal insist that the regulation is in the interest of discipline in the high school; that the boy is indolent and indifferent and, on that account, failed to complete the high school course within the prescribed time; that the board was clothed with the authority to make and enforce the regulation in question pursuant to § 1251, Comp. Laws 1913, which provides that:

"Each board of education shall have the power and it shall be its duty:

. . . . . . . . . . . .

"11. To adopt, alter and repeal, whenever it may deem expedient, rules and regulations for the reception, organization, grading, government and instruction of pupils, their suspension, expulsion or transfer from one school to another. But no pupil shall be suspended or expelled except for insubordination, habitual indolence or disorderly conduct; such suspension shall not be for a longer period than ten days, nor such expulsion beyond the end of the current term of school."

The Constitution of North Dakota, §§ 147 et seq., imposes upon the legislature the duty to make provision for the establishment and maintenance of a system of free public schools. Pursuant to this mandate the legislature erected a public school system (see chapter 12, Political Code, §§ 1105–1529, inclusive, Comp. Laws 1913). And the legislature declared (§ 1343) that "The public schools provided for in this chapter shall be at all times equally free, open and accessible to all children over six and under twenty-one years of age residing in the district." These several provisions of the Constitution and statutes were considered in Anderson v. Breithbarth, 62 N. D. 709, 245 N. W. 483, and Stromberg v. French, 60 N. D. 750, 236 N. W. 477.

In the last named case where the question was as to the power of

the board of education of the city of Langdon to enact the regulation there challenged, we said:

"Thus the legislature reposed a very broad discretion in boards of education with respect to the conduct and regulation of schools conducted by them.

"The enactment of the defendant school board, of which the plaintiff complains, is clearly aimed at the conservation of school property and the maintenance of good order and discipline in the school. As a general rule the decision of a school board, 'if exercised in good faith on matters affecting the good order and discipline of the school, is final so far as it relates to the rights of pupils to enjoy school privileges, and the courts will not interfere with the exercise of such authority unless it has been illegally or unreasonably exercised.' 35 Cyc. 1135. See also 24 R. C. L. 574 et seq. 'The power of the board of education to control and manage the schools and to adopt rules and regulations necessary for that purpose is ample and full. The rules . . . necessary to a proper conduct and management of the schools are, and must necessarily be, left to the discretion of the board, and its acts will not be interfered with nor set aside by the courts, unless there is a clear abuse of the power and discretion conferred.' Wilson v. Board of Education, 233 Ill. 464, 84 N. E. 697, 15 L.R.A.(N.S.) 1136, 13 Ann. Cas. 330; Christian v. Jones, 211 Ala. 161, 100 So. 99, 32 A.L.R. 1340. Presumptively, rules and regulations established by a school board are reasonable and proper. Kinzier v. Independent School Dist. (Kinzer v. Toms) 129 Iowa, 441, 105 N. W. 686, 3 L.R.A.(N.S.) 496, 6 Ann. Cas. 996; Christian v. Jones, supra. And whether or not such rules and regulations are reasonable is a question of law to be determined by the court. See Kinzer v. Independent School Dist., supra; Fertich v. Michener, 111 Ind. 472, 11 N. E. 605, 14 N. E. 68, 60 Am. Rep. 709.

But it must be remembered that the defendant board of education is a creature of the legislature. Such a corporate body has no powers that are not either expressly or impliedly conferred by the statutes giving it life or essential to effectuate the purposes of its creation. And in defining these powers the rule of strict construction applies and any doubt as to their existence or extent must be resolved against it. See Lang v. Cavalier, 59 N. D. 75, 228 N. W. 819, and cases cited; State

ex rel. Mannes v. Alquist, 59 N. D. 762, 231 N. W. 952, 72 A.L.R. 494; Pronovost v. Brunette, 36 N. D. 288, 162 N. W. 300; 24 R. C. L. 569. Here, the power of the board of education to enact the regulation which the plaintiff challenges must be measured by subsection 11 of § 1251, Comp. Laws 1913, heretofore quoted. While this statute confers broad general powers upon the board, nevertheless it must be considered in the light of the policy as declared in § 1343, supra, that "The public schools . . . shall be at all times equally free, open and accessible to all children over six and under twenty-one years of age residing in the district." It is one thing to pass rules and regulations for the organization, reception, government and instruction of pupils, their suspension, expulsion or transfer; it is another to impose a charge for school privileges. In the one case the board of education is clothed with a wide discretion; in the other it has none. In the one case its acts are presumptively reasonable and proper; in the other its acts being beyond its authority, no presumptions attend. Payment for school privileges cannot be exacted from a bad or indolent pupil any more than it can from a good and industrious one. No statute can be found which attempts to authorize the imposition of a tuition charge on resident children of school age. If a pupil be habitually indolent, it is for the board of education and its agents to determine whether or not he shall be suspended or expelled. But if suspension or expulsion be determined on, the statute, § 1251, supra, superior to rules, expressly limits the duration thereof. And if there be grounds such as to warrant suspension or expulsion they cannot be palliated because of a monetary consideration paid to the district.

The defendants contend that the high school period is clearly limited by accepted practice and by statutory implication to four years. In this behalf they point to the definite tendency on the part of high school authorities generally to discourage attendance in an ordinary high school course beyond four years; to the rules generally prescribed for the government of musical, athletic and other activities; to the high school courses that are so constructed as to enable the average pupil to complete them in four years; and to the statute, chapter 260, Sess. Laws, 1935, which limits to four years the period during which tuition may be paid for high school pupils attending school outside the district of their residence. Be this as it may, it is all beside the point. It

does not spell out authority for high schools to charge tuition to pupils of school age residing within the districts wherein the schools are functioning.

It is clear to us that the regulation involved in the instant case is unreasonable and beyond the power of the board to enact and enforce. The order sustaining the demurrer to the defendants' answer must be and it is affirmed.

BURKE, Ch. J., and MORRIS, CHRISTIANSON and BURR, JJ., concur.