[File No. 7167]

GREAT NORTHERN RAILWAY COMPANY, a Corporation, Respondent, v. J. T. SEVERSON, as County Treasurer of Nelson County, North Dakota, and his successor in office, Appellant.

(50 NW2d 889)

Opinion filed October 29, 1951.   Rehearing denied Jan. 23, 1952

*Wallace E. Warner,* Attorney General, *P. O. Sathre* and *C. E. Brace, Assistant* Attorneys General, and *Lysle Boostrom,* States Attorney, for appellant.

*Nilles, Oehlert & Nilles,* for respondent.

MORRIS, C. J. Osago School District No. 58 is a common school district in the County of Nelson maintaining and operating a standard four year high school. On August 13, 1946, the governing board of the district unanimously adopted a resolution pursuant to the provisions of Section 57–1602 RCND 1943 declaring that the amount of taxes which may be raised at the maximum rate authorized by law would be insufficient to provide an adequate amount for the necessary requirements of the school district and that it was necessary to levy taxes in excess of the statutory levy limitation for the purposes of meeting the current expenses of the district to the extent of fifty per cent of that limitation for the years 1946 and 1947. The question of increasing the levy limit was submitted to the electors of the district at a special election on the 24th of September, 1946. The ballot stated the question as follows: "Shall Osago School District No. 58 levy taxes for the year (or years) 1946, 1947, which shall exceed the legal limit by 50%, so that the taxes levied for this current year instead of being $4989.95, which is the limit authorized by law, shall be $7484.92?" At this election 94 votes were cast in favor of the increase and 42 against.

At the time the proceedings were had to increase the levy limit, Section 57–1514 RCND 1943 was in effect, which authorized common school districts giving four years of standard high school work to levy taxes not to exceed twenty-two mills. The election had the effect of increasing that limit by fifty per cent, or by an additional eleven mills, making the total limit thirty-three mills, as authorized by the voters pursuant to the law then in effect.

Section 57–1514 RCND 1943 was amended and reenacted by Chapter 359, SLND 1947, that became effective July 1, 1947. Under that amendment a common school district giving four years of high school work may levy taxes not to exceed thirty-six mills.

The clerk of the school board of the district certified to the County Auditor of Nelson County for the year 1946 a levy of thirty-three mills, which was the maximum levy established by the electors of the district at the special election in 1946. Despite the fact that no other election was held in the district, the clerk of the school board, for the year 1947, certified a levy of 50.12 mills, which was 14.12 mills in excess of the thirty-six mill limitation established by Chapter 359, SLND 1947. This excess levy applied to the valuation of plaintiff's property amounts to $903.85. This amount the plaintiff paid under protest and now seeks to recover.

The plaintiff does not contest the right of the school district to levy thirty-six mills as prescribed by Chapter 359, SLND 1947, but challenges the right of the school district to use the 1946 election and the levy increase approved at that time as a basis for increasing the levy limit prescribed by Chapter 359, SLND 1947.

In this action the plaintiff also seeks to recover the sum of $315.03, paid under protest as an excess levy made by Aneta Special School District No. 20, for the year 1947. The district called and held an election in 1946 to increase the levy by twenty-five per cent, under the same statutes and procedure as that followed by Osago School District No. 58, except that the form of the ballot was as follows: "Shall Aneta Special School District No. 20 levy taxes for the years 1946 and 1947 and 1948 which shall exceed the legal limit by 25% so that the taxes levied for those years, instead of being 5102.06 dollars, which is the limit authorized by law, shall be 6377.58 dollars?

Yes ——————     No ——————."

The election resulted in twenty-five votes for and one against the increase. The ballot used in this election did not conform to that prescribed by Section 57–1606, which provides:

"Upon the ballot the question shall be submitted in substantially the following form:

Shall ————— school district levy taxes for the
year (or years) —————, which shall exceed the
legal limit by ————— per cent, so that the taxes
levied for this current year instead of being ———
dollars, which is the limit authorized by law, shall
be ————— dollars:

> Yes —————
> No —————"

At the time the election was held in 1946, the legal levy limit
was twenty-two mills, and the Clerk of Aneta School District
certified the levy for that year at twenty-two mills, plus twenty-
five per cent thereof, or 27½ mills, which was the amount ap-
proved by the voters at the election. But in 1947 he certified
the levy as forty-five mills. Thus he applied the twenty-five
per cent increase to the new statutory limit of thirty-six mills
provided by Chapter 359, SLND 1947. The plaintiff here chal-
lenges the right of the district to levy over thirty-six mills in
1947 and seeks to recover the excess of $315.03 which it paid
under protest.

The facts are stipulated. The controversy is one of law. At
the time the elections were held the levy limit for both districts
was twenty-two mills. Osago authorized an increase of fifty per
cent and Aneta authorized an increase of twenty-five per cent.
1946 taxes were levied by applying these increases to the base
levy limit of twenty-two mills. The following year the legis-
lature increased the limit of the levy that could be made without
an election to thirty-six mills. No further election was held in
either district. The question is: Can the district authorities
apply the percentage increases that were approved by the
voters in 1946, when the limit was twenty-two mills, to the new
limit of thirty-six mills that was established in 1947? The trial
court answered this question in the negative and rendered judg-
ment for the plaintiff.

School boards have no other powers than those which are con-
ferred upon them by the legislature. Pronovost v. Brunette,
36 ND 288, 162 NW 300. The taxing power of a school district
derives from the legislature. The legislature throughout the his-

tory of our state has meticulously circumscribed and limited the power of school boards to levy taxes by specific mill levy limitations which can be exceeded only by authority of the electors of the district in the manner prescribed by Chapter 57–16 RCND 1943. The legislature has been careful to provide by statute the manner and method by which the consent of the electors to levy taxes in excess of the limitations otherwise provided by law may be obtained. The first step is a declaration by resolution of the governing board of the district that the amount of taxes which may be raised at the maximum rate authorized by law will be insufficient and that it is necessary to levy taxes in excess of the statutory limitations for the purpose of meeting current expenses of the district, not to exceed seventy-five per cent over the legal limitation. This resolution must be passed by a two-thirds vote of all of the members of the board. Section 57–1602 RCND 1943.

A special election may be called by the governing board of the school district for the purpose of voting upon the question of authorizing an excess levy, as was done by both districts in this case. The notice of election is prescribed in considerable detail. It must give the year or years for which authorization is sought, as well as the percentage of the excess levy which is to be voted upon. And the notice must, among other things, provide electors with this information:

"1. The total amount of income and expenditures of such school district for the fiscal year preceding;

"2. The estimated expenditures for the year for which the taxes are to be levied;

"3. The aggregate amount of the tax levy which the governing body seeks authority to make;

"4. The aggregate amount of tax levy permissible without special authority from the electors; and

"5. The amount of the tax levy in excess of the statutory limit which the board seeks authority to make." Section 57–1603 RCND 1943.

Of particular importance in this case is the information required to be given the electors under figures 3 and 4 above, from which a comparison can be made by the voter between the

amount that can be levied within the statutory limitation and the total or aggregate amount for which the school board seeks authority to levy.

As further indicating the safeguards provided for the right of the elector to express his approval or disapproval of an excess levy, we note the vote required by statute for such approval. A majority of the voters may authorize an increase not to exceed twenty-five per cent over the legal limit, but "If the question submitted is for an increase of more than twenty-five percent and not to exceed fifty percent in the levy over the legal limit, a favorable vote upon such question by sixty percent of the electors voting shall be sufficient to authorize such excess levy. If the question submitted is for an increase of more than fifty percent and not to exceed seventy-five percent in the levy over the legal limit, a favorable vote upon such question by seventy percent of the electors voting on such question shall be sufficient to authorize such excess levy." Section 57–1605 RCND 1943.

In connection with this section it may be noted that Osago School District voted to increase the mill limit by eleven mills by a vote of less than seventy per cent of the electors voting. Thus it is apparent that, if at that election the question had involved an increase of more than fifty per cent of the then legal limit, the proposition would have failed to carry for lack of the majority required by the statute. Despite this situation and in the face of the very obvious intention of the electors to increase the levy limit of Osago School District by eleven mills, the clerk of the district the next year certified a levy of 50.12 mills, which was an increase of 28.12 mills above the statutory limit that existed at the time of the election and 14.12 mills in excess of the limit fixed by the amendment. This indicates an utter disregard of the intention of the voters. Nevertheless, it is argued that the legislature intended that this might be done because it had the power to determine the levy limit and could fix it at any point within reason that it saw fit. But this contention is incompatible with the concern for the intention of the voters and their determination that is indicated by the statutes to which we have referred, providing for the increase in the levy limit by popular vote. It appears to us that the great care taken by the legis-

lature to give the electors a complete picture of the effect of an excess levy upon the tax structure of the district indicates that it did not look upon excess levies with favor and intended that they should be approved only if absolutely necessary.

It is both a general and statutory rule of construction that the legislature intends an act to operate prospectively only, unless the contrary intention appears. Section 1–0210 RCND 1943. Blakemore v. Cooper, 15 ND 5, 106 NW 566, 4 LRA NS 1074, 125 Am St Rep 574; Adams & Freese Co. v. Kenoyer, 17 ND 302, 116 NW 98, 18 LRA NS 681; Warren v. Olson, 46 ND 203, 180 NW 529; E. J. Lander & Co. v. Deemy, 46 ND 273, 176 NW 922; Petters & Co. v. Nelson Co. 68 ND 471, 281 NW 61; Murray v. Mutschalknaus, 70 ND 1, 291 NW 118; Marks v. Mandan, 70 ND 434, 296 NW 34; Messersmith v. Reilly, 70 ND 638, 296 NW 920. Chapter 359, SLND 1947 which became effective July 1, 1947, provided a tax levy limitation of thirty-six mills, which was fourteen mills higher than the limitation in effect in 1946 when the elections were held in Osago and Aneta School Districts. It is significant that when it increased the levy limit, the legislature made no change in the law providing the procedure for increasing the limit by a vote of the electors. All of the safeguards and restrictions previously provided remained in force. The amendment contains nothing to indicate that it was intended to apply to elections previously held. To say that the legislature intended to substitute, retroactively, the thirty-six mill limit for the *twenty-two* mill limit which was the basis upon which the voters of the respective districts approved the increases in prior elections is to attribute to the legislature an intent to give the statute an undeclared insidious retrospective operation contrary to the respect for the will of the voters of the districts that is indicated by the careful manner in which the legislature has prescribed the details of the procedure by which the levy limit may be increased.

This view is further supported by the general rule that where the legislative intention with respect to the meaning of tax statutes is doubtful, the doubt must be resolved against the government and in favor of the taxpayer. Standard Oil Co. v. State Tax Commissioner, 71 ND 146, 299 NW 447, 135 ALR 1481; Gold-

berg v. Gray, 70 ND 663, 297 NW 124; Stern v. Gray, 72 ND 134, 5 NW2d 299; 51 Am Jur, Taxation, Section 316.

Reference has been made to the conditions which confronted the lawmakers with respect to school finances in many districts of the state. That condition has no bearing on this controversy. The 1947 legislature adequately provided for whatever emergency then existed by raising the mill levy limit from twenty-two to thirty-six mills, which could be further increased by holding elections in the respective districts in the manner prescribed by Chapter 57–16 RCND 1943.

Electors may authorize an increase above the thirty-six mill limit by the same procedure by which they authorized the increase above the twenty-two mill limit under the old law. No election has been held since the enactment of the amendment in either district. The increase sought to be applied here was determined by the officers of the respective districts and not by the electors. School district officers are not empowered by either the old or the new law to increase the levy limits that were provided in those statutes. A construction which applies a percentage increase approved by the voters when the limit was twenty-two mills to the new limit of thirty-six mills completely ignores the will and the action of the voters.

Chapter 359, SLND 1947 is wholly prospective in its operation. It established a limitation of thirty-six mills, which became effective July 1, 1947. It furnished no basis to which school district officers might apply the percentage of increase voted by school districts in elections held when the prior limit of twenty-two mills was in effect. The judgment appealed from is affirmed.

BURKE, J., and ILVEDSON, Dist. J., concur.

SATHRE, J., being disqualified, did not participate, ROY A. ILVEDSON, Judge of Fifth Judicial District, sitting in his stead.

CHRISTIANSON, J. (Dissenting). I am unable to agree with the conclusions reached in the opinion prepared by Chief Justice Morris. I am of the opinion that the basic legal mill limit applicable in the computation of taxes levied by Osago School Dis-

trict and by Aneta Special School District in 1947 was the legal mill limit prescribed by Chapter 359, Laws 1947; that NDRC 1943, 57–1514 had ceased to exist; that the legal mill limit that had been prescribed thereby had no application to any tax levy made by any school district in this state subsequent to July 1, 1947, and that in the computation of such levies the legal mill limit prescribed in Chapter 359, Laws 1947, was applicable.

School district taxes must be levied "in specific amounts of money." NDRC 1943, 57–1501. There are two factors which control the amount which a school district may levy: (1) The net taxable assessed value of the property subject to the tax; and (2) the legal mill rate to be applied in computing the tax. NDRC 1943, 57–1502; 57–1514 as amended by Chapter 359, Laws 1947. The first factor is influenced by whatever affects the net taxable value of the property that is subject to the tax. In this state the taxable value of property that is subject to taxation and the legal limit of the amount of taxes that may be levied by a school district are affected by statute, which classifies taxable property for assessment at a percentage of its full and true value, and fixes the percentage of the net assessed value at which property shall be assessed. NDRC 1943, 57–0228.

The records of the legislature bear ample evidence that in this state the matter of taxation and the levy of taxes for school purposes have been a subject of public concern to which the people and the lawmakers have given much consideration throughout the years. The records of the legislature show that legislation has been proposed and enacted seeking to limit the amount of taxes that may be levied by school districts in this state by invoking both of the above factors, namely, by classifying property for assessment at only a specific percentage of its full and true value and by increasing or decreasing such percentage; and by increasing or decreasing the legal mill rate to be applied in computing the amount of the tax that may be levied. I shall refer to the legislation relating to each of these factors as they both relate to the same general subject, namely, the amount of taxes that might be levied by a school district under the limitations prescribed by the law.

## Taxable Value of Property Subject to Tax

In 1919 the Legislative Assembly enacted a statute (Laws 1919, Chapter 220) relating to the classification of property for assessment at a percentage of its value and prescribing such percentage. Laws 1919, Chapter 220. Such statute provided that certain specified properties denominated class one should be valued at one hundred per cent of the full and true value thereof and that certain other properties denominated class two should be assessed at fifty per cent of the full and true value thereof. In 1923, Chapter 220, Laws 1919, was amended and reenacted by Chapter 298, Laws 1923. This latter enactment provided that all properties subject to a general property tax, and not exempted by law from taxation or subject to any gross sales or other lieu tax should be valued at seventy-five per cent of the full and true value thereof and provided further that "assessors and Boards of Review shall assess and return all taxable property at its full and true value, and it shall be the duty of the county auditor after equalization by the state board of equalization to make the computations necessary to reduce such assessed value to said Seventy-five (75) per cent." Laws 1923, Chapter 298; 1925 Supplement, Section 2122a. In 1932 the North Dakota Taxpayers Association caused certain measures relating to taxation and expenditure of public funds to be initiated, among others, a law to amend and re-enact the former law (Laws 1923, Chapter 298; 1925 Supplement, Section 2122a) relating to the basis of assessment of property for taxation purposes so as "to reduce such basis from seventy-five (75) per cent of the full and true value thereof to fifty (50) per cent of the full and true value thereof." Initiated Measure, Laws 1923, pp 493–494. The provisions so adopted pursuant to initiative election were embodied in NDRC 1943, Section 57–0228, and read as follows:

"The value of all property subject to a general property tax, not exempted by law nor subject to any gross sales or other lieu tax to be used in the computation of the tax levied, shall be fifty percent of the full and true value thereof. Assessors and boards of review shall assess and return all taxable property at its full

and true value, and the county auditor, after equalization by the state board of equalization, shall make the computations necessary to reduce the assessed value to said fifty percent." NDRC 1943, 57–0228.

In 1945 the legislature amended and re-enacted the above section 57–0228 so as to raise the valuation basis for computing a tax levy from fifty per cent to seventy-five per cent of the full and true value of the property. Laws 1945, Chapter 317. The effect of said Chapter 317 was to increase the amount of taxes a school district might levy, and to authorize a levy upon taxable property fifty per cent higher than could have been levied under the former law. The law contained an emergency clause and thus the law became effective from and after its passage and approval on March 12, 1945.

Later referendum petitions were filed against the measure; but under the provisions of the constitution the law was effective from the time of its passage and approval until its rejection at the referendum election. Said Chapter 317, Laws 1945, therefore, was in effect when tax levies were made in 1945. The law was submitted at the primary election in June, 1946, and was rejected by the electors. As a result of such rejection section 57–0228 was revived and the fifty per cent valuation basis provided in that section was restored. Dawson v. Tobin, 74 ND 713, 24 NW2d 737.

It is a matter of common knowledge that Chapter 317, Laws 1945, had the active support of a number of groups directly interested in the maintenance and operation of public schools, when it was being considered by the legislature. These same groups took an active part in the referendum election. They caused statements to be printed in the Publicity Pamphlet. Statements were printed in the Publicity Pamphlet in favor of the maintenance of the seventy-five per cent base by the Committee for the Defense of the Common Schools and by the North Dakota Farmers Union. In the statement by the Committee for the Defense of the Common Schools, printed in the Publicity Pamphlet, it is said:

"On Referendum of House Bill 38 (75% Tax Base) Passed

by the House by a vote of 89–22 and by the Senate by a vote of 36–12.

It was signed by the Governor.

This bill has the endorsement of:

STATE SCHOOL OFFICERS ASSOCIATION

NORTH DAKOTA EDUCATION ASSOCIATION

THE NORTH DAKOTA CONGRESS OF PARENTS AND TEACHERS

THE LEAGUE OF MUNICIPALITIES     NON-PARTISAN LEAGUE

THE FARMERS UNION     THE DEMOCRATIC PARTY

NORTH DAKOTA COUNTY COMMISSIONERS

"1. According to a survey made by the State Department of Public Instruction, approximately 1360 of 2272 school districts cannot balance their budgets currently on the 50% Tax Base. For these schools the choice lies between:—curtailing the quality of instructional service; shortening the school term; or actually closing school."

A statement opposing the referred measure and urging the electors to vote "No" on such measure was prepared and the cost of publication paid for by the North Dakota Taxpayers Association. The first two grounds in such statement, urged in opposition to the measure, are:

"1. It permits all units of government to increase taxes by as much as 50% over prior limitation laws. Property taxes increased from $19,777,931.17 in 1944 to $25,365,956.02 in 1945, an increase of $5,588,024.85.

"2. While it is urged that the schools need the increase, yet $2,664,840.50 of the tax increase came from other units of government and had nothing to do with schools."

Under point 8 it is stated:—"Counties do not need the increased taxes, as they have been given much aid by increase in levy rates, the use of liquor taxes for institutional care, and the assumption of much of the relief load by the State."

In the referendum campaign it was generally conceded by opponents of the referred measure that there was need for an increase of the tax revenue of school districts and the argument presented by those opposing the measure was primarily to the effect that to increase the percentage of the value at which properties shall be assessed is not the proper remedy to increase

school tax revenues, but that instead of legislation authorizing such increase, legislation should be enacted to increase the mill limit of taxes for school purposes and thus restrict the authorized tax increases to school taxes alone.

## Limitations on Tax Levies in School Districts

In 1923 the Legislature enacted a statute (Laws 1923, Chapter 318) prescribing the limits of tax levies in counties, cities, villages, townships and school districts. The statute also provided that a county, city, village, township or school district might levy taxes in excess of the basic mill limits prescribed in the act "when authorized so to do by a majority of the electors voting upon the question at a regular or special election." Idem, Sec. 6. The statute (Sec. 6) further provided that "the tax levying board of the taxing district shall have power to call a special election for the purpose of voting upon the question of authorizing an excess levy, or in case of counties, to submit the question to the voters either at a special election called for that purpose or at the regular primary election." The statute further provided:

"Such elections shall be held not later than September first of the year in which the tax is to be levied, and shall be conducted as other elections of such taxing districts except as herein otherwise provided. The notice of election, in addition to the usual requirements, shall contain a statement of the question to be voted upon pursuant to the terms of this act, and shall also show the total amount of income and expenditures of such taxing district for the fiscal year immediately preceding; the estimated expenditures, for the year for which the taxes are to be levied; the aggregate amount of tax levies which the tax levying board seeks authority to make; the aggregate amount of tax levies permissible without special authority from the electors; and the amount of tax levy in excess of the statutory limit which the board seeks authority to make. A copy of the notice of election shall be mailed by the auditor or clerk of the taxing district to the tax commissioner at Bismarck, North Dakota, on or before the date of the posting or first publication of the notice and shall be open to public inspection in his office."

The statute also provided that the question should be submitted to the electors at such election in the following form:

"Shall ........................ (naming the taxing district) levy taxes for the year ................. (naming the current calendar year) which shall exceed the legal limit by .......... dollars, so that the taxes levied instead of being .............. dollars, which is the limit authorized by law, shall be ........ dollars?"

In 1929 the Legislative Assembly enacted a statute (Laws 1929, Chapter 235) repealing the provisions of Chapter 318, Laws 1923, and the acts amendatory thereof, and prescribed the mill limits on levies in counties, cities, villages, townships and school districts. Such statute also provided for levies in excess of the basic legal limit. The statute said:

"A county, city, village, township or school district may levy taxes in excess of the limitations prescribed by sections four to eight inclusive of this act when authorized so to do by sixty per cent (60%) of the electors voting upon the question at a regular or special election, provided, however, that the excess levy shall not be more than 50 per cent over and above the legal limitation of levy. The governing body of any such municipality may, at any time prior to August 1st in any year, by a two-thirds vote of all the members of said board, declare by resolution that the amount of taxes which may be raised at the maximum rate authorized by law will be insufficient to provide an adequate amount for the necessary requirements of the municipality in question and that it is necessary to levy taxes in excess of said limitations for the purpose of meeting the current expenses of the municipality."

The statute provided that upon the passage of such resolution the governing board should have power to call an election for the purpose of voting upon the question of authorizing an excess levy. The statute further provided for the submission of the question of authorizing an excess levy at an election, and provided for notice of such election in substantially the same form as that provided in the former statute. The form of the ballot

set forth in said Chapter 235, Laws 1929, is precisely the same as that set forth in Chapter 318, Laws 1923.

The statute further provided:

"The governing body of any school district shall be authorized to submit the question of authorizing an excess levy for the current year and the next succeeding year or the next two succeeding years. When the question of authorizing an excess levy for more than one year is submitted by the governing body of any school district, the form of ballot shall be varied from the form prescribed in this section in order to properly cover the question submitted. The notice of election shall, in addition to the foregoing requirements, give notice of the year or years for which authorization is sought for an excess levy."

In 1943 the Legislative Assembly amended and re-enacted Sec. 7, Chapter 235, Laws 1929, and increased the basic or legal mill limit of school district tax levies. The statute provided that "any school district giving four years of standard high school work may levy taxes not to exceed 22 mills." Chapter 258, Laws 1943; NDRC 1943, 57–1514. The same Legislative Assembly enacted another measure providing for tax levies in school districts in excess of the basic legal limit, and repealing the portions of Sec. 13, Chapter 235, Laws 1929, relating to and governing school districts. Chapter 259, Laws 1943. This latter statute, among other things, provided:

"The governing body of any school district may, at any time prior to September first in any year, by a two-thirds vote of all the members of said board, declare by resolution that the amount of taxes which may be raised at the maximum rate authorized by law will be insufficient to provide an adequate amount for the necessary requirements of the school district and that it is necessary to levy taxes in excess of said limitations for the purpose of meeting the current expenses of the school district, and that such excess so required is an increase over the legal limitation of a specified percentage not to exceed 75%." Indem, Sec. 2.

Such statute further provided that thereupon the governing body of such school district shall have the power to call a special

election for the purpose of voting upon the question of authorizing an excess levy, and that:

"Such election shall be held not later than October first of the year in which the tax is to be levied and shall be conducted as other elections of such school district except as herein provided. The notice of election, in addition to the usual requirements, shall contain a statement of the question to be voted upon pursuant to the terms of this act, and shall also show the total amount of income and expenditures of such school district for the fiscal year preceding; the estimated expenditures for the year for which the taxes are to be levied; the aggregate amount of tax levy which the governing body seeks authority to make, the aggregate amount of tax levy permissible without special authority from the electors; and the amount of tax levy in excess of the statutory limit which the board seeks authority to make. A copy of the notice of election shall be mailed by the clerk of the school district to the tax commissioner at Bismarck, North Dakota on or before the date of the posting or first publication of the notice and shall be open to public inspection in his office." Idem, Sec 3.

"The governing body of the school district shall be authorized to submit the question of authorizing an excess levy for the current year and not to exceed four succeeding years, and the notice of election shall give the year or years for which authorization is sought for an excess levy as well as the percentage of excess which is to be voted upon." Idem, Sec 4.

"If the question submitted is for any increase of not to exceed 25% in the levy over the legal limit, a favorable vote for such question of a majority of the electors voting shall be sufficient to authorize such excess levy; if the question submitted is for an increase of more than 25% and not to exceed 50% in the levy over the legal limit, a favorable vote for such question of 60% of the electors voting shall be sufficient to authorize such excess levy; if the question submitted is for an increase of more than 50% and not to exceed 75% in the levy over the legal limit, a favorable vote for such question of 70% of the electors voting on such question shall be sufficient to authorize such excess levy." Indem, Sec 5.

"Upon the ballot the question shall be submitted in substantially the following form:

" 'Shall .................... school District levy taxes for the year (or years) .............., which shall exceed the legal limit by .......... per centum, so that the taxes levied for this current year instead of being ............ Dollars, which is the limit authorized by law, shall be ................ Dollars?

Yes.................... □
No· .................... □' " Idem, Sec. 6.

"If the percentage of the votes cast in favor of the question submitted are as specified in Section 5 herein, such excess levy shall thereby be authorized. In such case, the election board shall certify the result of such election to the county auditor within ten days after such election. The certificate shall include a statement of the question as it appeared upon the ballot, together with the total number of votes cast upon the question, the number of votes cast in favor of it, and the number of votes cast against authorizing the excess levy. If the question proposed carried by the required majority the county auditor shall extend such excess levy upon the tax lists of the school district." Idem, Sec. 7.

Said Chapter 259, Laws 1943, was embodied in and now appears as Chapter 57–16, NDRC 1943. No change was made in the provisions of Laws 1929, Chapter 235, relating to excess levies in counties, cities, villages or townships, but such provisions were embodied in and now appear as Chapter 57–17, NDRC 1943.

In 1947 the legislature enacted Chapter 359, Laws 1947, to amend and re-enact NDRC 1943, 57–1514, fixing the tax levy limitations in school districts. The act specifically amended and re-enacted Section 57–1514, so as to read as follows:

"The aggregate amount levied by any school district, whether common, independent, or special, shall not exceed such amount as will be produced by a levy of twenty-four mills on the dollar of the net assessed valuation of the district, except that: 1. Any school district giving two years of standard high school work may levy taxes not to exceed thirty mills; 2. Any school

district giving three years of standard high school work may levy taxes not to exceed thirty-three mills; 3. Any school district giving four years of standard high school work may levy taxes not to exceed thirty-six mills; and 4. Any school district maintaining a consolidated elementary school may levy taxes not to exceed twenty-seven mills on the dollar of its net taxable valuation, except that where high school work is offered by such school the limitations on the regular high school levy shall apply."

The presumption is that the legislature knew the then "existing statutes, and the state of the law relating to the subjects with which they dealt." 2 Lewis' Sutherland Statutory Construction, 2d ed, Sec. 447, p 852. It is also presumed that the legislature acted upon evidence. "The legislature is presumed to act with a full knowledge of all facts upon which their legislation is based or to which it is to be applied." 2 Lewis' Sutherland Statutory Construction, 2d ed, Sec. 497, p 926; State ex rel. Linde v. Packard, 35 ND 298, 317, 160 NW 150. These presumptions are peculiarly applicable with respect to Chapter 359, Laws 1947.

The bill for the enactment of Chapter 359, Laws 1947, (H. B. No. 26) recites that it was introduced by "Langley and Legislative Research Committee at the request of North Dakota Educational Association, State Congress of Parents and Teachers Association, The North Dakota School Officers Association and the Superintendent of Public Instruction." Laws 1947, p 577. Langley was chairman of the Legislative Research Committee from the time of its organization in 1945 until 1949. He was also chairman of the Committee on Education in the House of Representatives in 1945 and in 1947.

The Legislative Research Committee was created by the Legislative Assembly in 1945. Such Committee consisted of five senators and six representatives, and there was appropriated for the purpose of enabling it to carry on its work the sum of $25,000. Laws 1945, Chapter 289. The Committee was given broad powers and authorized "to study, consider, accumulate, compile and assemble information on any subject upon which the legislature may legislate; . . . to collect information

concerning the government and general welfare of the State and of its political subdivisions; . . . prepare proposed bills and resolutions for consideration of the succeeding legislature." The act provided that: "Each department, board, commission, agency, officer or employee in the state government shall furnish such information and render such assistance to the committee as the committee may from time to time request." It must be presumed that the Committee in the performance of its duties inquired into and fully informed itself on the subject covered by said Chapter 359, Laws 1947, and the conditions which made the legislation necessary and that they did know what had been done by the various school districts under then existing laws.

In discussing the enactment of said Chapter 359, Laws 1947, the Attorney General, in his brief in Great Northern Railway Co. v. Mustad, 76 ND 84, 33 NW2d 436, said: "Facts, information and statistics were presented to the Legislative Committee by representatives of school districts and by the Department of Public Instruction showing the grave financial situation of the school districts throughout the state, particularly the common school districts. It was further shown that even where special elections had been held for the increase of levies, such increases based on the existing levy limitations were not sufficient."

The Attorney General, with and as a part of his brief, also presented a detailed statement prepared by the Department of Public Instruction showing the school districts that in 1946 had voted to increase their levies, in many instances for seventy-five per cent over the legal limit and for the then current year and for the four succeeding years.

It is presumed that the lawmakers who enacted Chapter 359, Laws 1947, gave careful consideration to the measure and this presumption is supported by the record of the proceedings of the assembly. The Journals of the House of Representatives show that the bill for the enactment of said Chapter 359, Laws 1947, was first referred to the Committee on Finance and Taxation and then referred to the Committee on Education for consideration by that Committee to be later re-referred to the Committee on Finance and Taxation. (House Journal 1947, pp

77, 101). It is also presumed that the lawmakers had knowledge of the then state of the law and what had transpired with respect to similar legislation during the immediate past and this presumption is likewise supported by the records of the Legislative Assembly.

The records of the Legislative Assembly show that many of the members of the Legislative Assembly in 1947 had been members of the Assembly in the sessions held in 1943 and 1945 and had served on committees which had considered the various measures relating to school taxes. The records show that Langley, the chairman of the Legislative Research Committee who introduced the bill for the enactment of Chapter 359, Laws 1947, was a member of the House of Representatives during the sessions of 1943, 1945 and 1947. During those sessions he was a member of the Committee on Education and during the sessions of 1945 and 1947 was chairman of the Committee on Education. He and other members of the Committee on Education in the session of 1945 introduced the bill (H. B. No. 38) for the enactment of Chapter 317, Laws 1945, which increased the basis on which taxes on property was to be computed from fifty per cent to seventy-five per cent of the full and true value thereof. See Chapter 317, Laws 1945.

The members of the legislature knew that from time to time the legislature had changed the basic mill limit of tax levies in school districts. They also knew that from time to time the legislature had changed the base for the valuation on which property taxes were to be computed and that such laws which changed the basic mill limit and which changed the base of valuation on which property taxes were to be computed had been uniformly applied to the computation of all tax levies made in all school districts after such laws took effect. They knew that in 1943 the Legislative Assembly increased the basic mill rate limit on tax levies of school districts giving four years of standard high school work from 18 mills to 22 mills. Laws 1943, Chapter 258. They also knew that notwithstanding such increase in the basic mill rate limit the Legislative Assembly in 1945 found it necessary to enact further legislation to increase the amount of revenue that a school district would receive from

a tax levy, and enacted Chapter 317, Laws 1945, which increased the base for the valuation of property for the computation of taxes from fifty per cent to seventy-five per cent of the full and true value thereof and thus increased the amount of revenue that would be derived by school districts from a general property tax by fifty per cent in excess of the revenue that would have been received from such taxes under the former law. They also knew that the law increasing the base of the taxable valuation of property from fifty per cent to seventy-five per cent of its net assessed value was in force from July 1, 1945, until it was repealed at the referendum election held June 25, 1946, and that the basis of valuation on which property assessments were computed in 1945 was seventy-five per cent of the full and true value. They knew also that upon the repeal of Chapter 317, Laws 1945, at the election held June 25, 1946, the former base of fifty per cent of the full and true value was re-established thereby decreasing the amount of revenue that would be received by school districts from general property taxes by thirty-three and one-third per cent below the revenue that would have been received from such taxes under the law that was in force when the 1945 tax was levied. Dawson v. Tobia, supra. They knew that following the repeal of the referred measure at the election held June 25, 1946, an increasing number of school districts found it necessary to authorize increased levies not only for the current year 1946 but for succeeding years. Many of such districts authorized such increased levies for the years 1946, 1947, 1948, 1949 and 1950.

The Osago School District and the Aneta Special School District were among the districts, which pursuant to proceedings had and elections held in such districts following the repeal of Chapter 317, Laws 1945, at the election held June 25, 1946, authorized levies in excess of the limitations otherwise provided by law. In the Osago School District a levy in excess of the legal limit by fifty per cent for the years 1946 and 1947 was approved and authorized at an election held September 24, 1946. In the Aneta Special School District a levy in excess of the legal limit by twenty-five per cent for the years 1946, 1947 and

1948 was approved and authorized at an election held August 20, 1946.

With their knowledge of the facts the lawmakers determined that the former legal limit of 22 mills on tax levies for school districts of the type in question here was too low and that such basic legal limit should be raised to 36 mills and to carry their determination into effect they enacted said Chapter 359, Laws 1947, and thereby repealed and terminated for all purposes the provisions of Section 57–1514, NDRC 1943, and established the legal mill limit prescribed in said Chapter 359, Laws 1947, as the only legal mill limit upon all tax levies for school districts to be made after such law took effect.

The legislature has plenary power of legislation and may pass any law not forbidden by the Constitution of the State or of the United States. State ex rel. Fargo v. Wetz, 40 ND 299, 308, 316, 168 NW 835, 5 ALR 731. It is a matter wholly within the discretion of the legislature to determine whether, concerning any subject, such conditions and circumstances exist as to warrant it to act. It is the sole judge as to whether such cause exists as requires the enactment of a law and if it makes a law and there is no constitutional restriction there is no authority in the government which can declare it void or refuse to give it effect. 1 Lewis' Sutherland, Statutory Construction, 2d ed, Sec. 81, pp 123, 133. The power to amend statutes belongs exclusively to the legislature. The legislature has the power to amend existing legislation in any manner not inconsistent with constitutional limitations thereon and a legislature cannot limit the power of amendment of a subsequent legislature either as to the extent or manner of its exercise. 1 Sutherland Statutory Construction, 3d ed, Sec. 1902, p 327. In the absence of special constitutional provisions, the state has full control over the exercise of powers of taxation by a municipal corporation and it is "within the power of the legislature uninhibited by the contract clause of the constitution to prohibit a levy, expand or restrict the amount of a tax levy, or to increase or reduce the rate of a tax." 16 CJS pp 732–733; State v. Flaherty, 45 ND 549, 178 NW 790; State ex rel. Fargo v. Wetz, supra.

The legislature had undoubted power to enact the laws in-

volved in this controversy. The legislature had power to enact a statute prescribing a basic or legal mill limit for the levy of taxes in school districts and it equally had the undoubted right to amend and change such law at any time it deemed this to be necessary or desirable unless the latter law would result in impairment of a contract or of vested rights. It also had the power to enact a law providing that under certain circumstances school districts might levy a tax in excess of the maximum legal limit which the legislature had prescribed. The statutes involved in this controversy clearly did not impair the obligation of any contract or any vested right. The laws were not retrospective or retroactive and there is no contention on the part of the defendant that they should be given such construction. They did not look backward. Walker County Fertilizer Co. v. Napier, 184 Ga 861, 193 SE 770, 773. They prescribed rules for the future. They speak solely in relation to the future and they neither take away nor impair any vested rights under existing laws. City of New York v. Foster, 132 NYS 152, 155, 148 App Div 258; In Re Ross et al., 201 Okla 476, 207 P2d 254, 256. The fact that the condition which authorized the governing boards of Osago School District and Aneta Special School District to levy taxes in 1947 in excess of the basic legal limit was created by elections held before Chapter 359, Laws 1947, was enacted, does not render the application of said Chapter 359, Laws 1947, to tax levies made after said Chapter 359, Laws 1947, became effective, retroactive or retrospective. A statute is not retroactive because it draws upon antecedent facts for its operation. 50 Am Jur, Statutes, Sec 476, p 493; Lewis v. Fidelity & D. Co., 292 US 559, 571, 78 L ed 1425, 1434; Reynolds v. United States, 292 US 443, 449, 78 L ed 1353, 1357; Cox v. Hart, 260 US 427, 435, 67 L ed 332, 337; In re Ross et al., supra; City of New York v. Foster, supra.

Chapter 359, Laws 1947, which increased the basic legal mill limit of tax levies in school districts became effective July 1, 1947. It operated to repeal all the provisions of Sec 57–1514, NDRC 1943. When said Chapter 359, Laws 1947, went into effect on July 1, 1947, said Sec 57–1514, NDRC 1943, ceased to exist. Crawford Statutory Construction, Sec 304, pp 619–620;

Goodno v. City of Oshkosh, 31 Wis 127. After July 1, 1947, the only basic or legal mill limit prescribed by law for levies in school districts were those prescribed by said Chapter 359, Laws 1947, and as to all such levies the provisions of said Chapter 359, Laws 1947, operated as though the basic or legal mill rate limit prescribed in said chapter had always been a part of the statute that was amended and re-enacted by said Chapter 359. 59 CJ p 1096, Sec 647; 50 Am Jur, Statutes, Sec 468, pp 481–482; U. S. v. La France, 282 US 568, 75 L ed 551–552; People v. Sweetser, 1 Dakota 294, 300, 46 NW 452, 454; Yoncalla State Bank v. Gemmill, 134 Minn 334, 159 NW 798, 799; State v. Moon, 178 NC 715, 100 SE 614; State v. Local Board of Review, 225 Ia 855, 283 NW 87; Neidermyer v. Neidermyer, 237 Ia 685, 22 NW2d 346, 350; People v. Boykin, 298 Ill 11, 131 NE 133; Black on Interpretation of Laws, Sec 131, p 357; 1 Sutherland, Statutory Construction, 3d ed, Sec 1935, p 431; Myers et al. v. Fortunato, 13 Del Ch 148, 116 A 623; Federal Deposit Insurance Corporation v. Leversen, 73 ND 118, 123, 11 NW2d 448, 451; State v. Hevelone, 92 Neb 748, 139 NW 636; Drainage Dist. No. 1 v. Kirkpatrick-Pettis Co., 140 Neb 530, 300 NW 582, 590; State ex rel. Department of Agriculture v. Narriott et al., 237 Wis 607, 296 NW 622; McClure v. United States, 95 F2d 744; Steffler v. Johnston, 121 F2d 447; Groso v. Bredthauer, 136 Neb 43, 284 NW 869; Miami Bridge Co. v. Railroad Commission, 155 Fla 366, 20 So2d 356; Blair v. Chicago, 201 US 400, 50 L ed 801, 26 S Ct 427; People v. Lowell, 250 Mich 349, 230 NW 202.

"An amendment of a statute by a subsequent act operates precisely as if the subject-matter of the amendment had been incorporated in the prior act at the time of its adoption, so far as regards any action had after the amendment is made. For it must be remembered that an amendment becomes a part of the original act, whether it be a change of a word, figure, line, or entire section, or a recasting of the whole language." Black on Interpretation of Laws, Sec 131, p 357.

"Amended statutes are to be read as to all subsequent occurrences, as if they had originally been in the amended form." U. S. v. La France, 282 US 568, 75 L ed 551–552, syl 10.

"The act as amended should be construed as to future events

as if it had been originally enacted in that form." 1 Sutherland, Statutory Construction, 3d ed, Sec 1935, p 431.

"Where a section of a statute is amended, the original ceases to exist, and the section as amended supersedes it and becomes a part of the statute for all intents and purposes as if the amendments had always been there." People v. Lowell, 250 Mich 349, 230 NW 202.

"The amended statute is to be construed as to any matter after the amendment as if it had been originally enacted in the amended form." 3 Dunnell Minn. Digest, Sec 8928; Yoncalla State Bank v. Gemmill, supra.

"Where a section of a statute is amended, the original ceases to exist, and the section as amended supersedes it and becomes a part of the statute for all intents and purposes as if the amendment had always been there." State ex rel. Gebhardt et al. v. Superior Court for King County, 15 Wash2d 673, 131 P2d 943, syl 9.

The approval by the electors of a school district of a proposal to levy taxes in excess of the limitations otherwise provided by law does not constitute the levy of a tax. It constitutes a step in the proceedings prescribed by the legislature to authorize a school district to levy a tax in excess of the legal limit. It is still necessary for the governing body of the school district to levy a tax each year as prescribed by law.

The laws of this state provide that "school district taxes shall be levied by the governing body of each school district on or before the last day of July of each year." NDRC 1943, 57–1513. That "with the exception of special assessment taxes and such general taxes as may be definitely fixed by law," all school district taxes shall be levied in specific amounts of money. NDRC 1943, 57–1501. That "taxes for school district purposes shall be based upon an itemized budget statement which shall show the complete expenditure program of the district for the current fiscal year and the sources of the revenue from which it is to be financed." NDRC 1943, 57–1513. That "the amount to be levied by any . . . school district . . . shall be computed by deducting from the amount of estimated expenditures for the current fiscal year as finally determined, plus the re-

quired reserve fund determined upon by the governing board from the past experience of the taxing district, the total of the following items: 1. The available surplus consisting of the free and unencumbered cash balance; 2. Estimated revenues from sources other than direct property taxes; 3. The total estimated collections from tax levies for previous years; and 4. Such expenditures as are to be made from bond sources." NDRC 1943, 57–1531. The statute also provides that "the tax rate of all taxes, except the rate of the state tax and taxes the rate of which is fixed by law, shall be calculated and fixed by the county auditor within the limitations prescribed by statute." And that "if any municipality shall levy a greater amount than the prescribed maximum legal rate of levy will produce, the county auditor shall extend only such amount of tax as the prescribed maximum legal rate of levy will produce. The rate shall be based and computed on the aggregate net assessed valuation of taxable property in the municipality or district levying the tax. The rate of all taxes shall be calculated by the county auditor in mills, tenths, and hundredths of mills." NDRC 1943, 57–1502. When the levy of a tax in excess of the legal limit has been authorized at an election held for the purpose of voting upon that question the election board is required to certify the result of such election to the county auditor within ten days after such election and to include in the certificate "a statement of the question as it appeared upon the ballot together with the total number of votes cast upon the question, the number of votes cast in favor of it, and the number of votes cast against authorizing the excess levy. If the question proposed carried by the required majority, the county auditor shall extend such excess levy upon the tax lists of the school district." NDRC 1943, 57–1607.

An authorization to the governing board of a school district to levy a tax in excess of the legal limit,—the limit otherwise provided by law,—authorizes the governing board to levy a tax "in excess of the limitations otherwise prescribed by law," in the specified year or years. The maximum amount that may be levied within the basic legal limit in any year is fixed by the application of the then prescribed maximum mill rate of levy

.to the "aggregate net assessed valuation of taxable property in the school district levying the tax." NDRC 1943, 57–1502, 57–1514. The amount the governing board is authorized to levy in any year *in excess* of the basic legal limit is predicated upon the maximum amount that may be levied within the *then* prescribed legal limit, and is computed by the application of the percentage of excess that has been authorized to the maximum amount that may be levied within "the limitations otherwise prescribed by law."

Reference has been made to the statutory provisions as to the contents of the notice of an election for authority to levy taxes in a school district in excess of the limitations prescribed by law, and to the form of ballet prescribed for use in such election; and it is argued that these evidence a legislative intent that the legal mill limit in force at the time of the election shall constitute the basis on which future excess tax levies must be computed and that a statute prescribing a new legal limit, enacted subsequent to the election, does not apply in computing the tax that may be levied in excess of the legal limit after the statute prescribing such new legal limit takes effect. As has been pointed out the legislation providing for the submission to the electors of a school district of the question whether the governing board should be authorized to levy taxes in excess of the limitations prescribed by law originated with the enact-· ment of Chapter 318, Laws 1923. That statute applied not only to school districts but to counties, cities, villages and townships. The provisions therein relating to the recitals in a notice of election and the form of the ballot applied to elections conducted in any of such municipalities. The excess levy that might be authorized under such statutes was only for the current year, that is, the year in which the election was held and the amount of the taxes that might be levied under the limit authorized by law and the amount proposed to be authorized to be levied in excess of the legal limit were stated in terms of specific sums of money and no reference was made either in the notice of election or in the ballot to the percentage by which it was proposed to exceed the legal limit. The same was true of the legislative enactment of 1929 (Laws 1929, Chapter 235) with the exception

that this latter statute authorized the governing board of·a school district to submit the question of authorizing an excess levy not only for the current year but for the succeeding year or the next two succeeding years. The 1929 statute set forth precisely the same form of ballot as that set·forth in Chapter 318, Laws 1923, but it provided that "when the question of authorizing an excess levy for more than one year is submitted by the governing board of any school district, the form of the ballot shall be varied from the form prescribed in·this section in order to properly cover the question submitted"; and that the notice of election shall, in addition to the foregoing enumerated requirements, "give notice of the year or years for which the authorization is sought for an excess levy."

The statements required to be set forth in the notice of election having a bearing upon the financial condition of the district were precisely the same as those prescribed in Chapter 318, Laws 1923, and as those prescribed for elections for authority to make excess levies in counties, cities, villages and townships. The statute made no change in the former law relating to excess levies in municipalities other than school districts.

Chapter 259, Laws 1943, provided for the levy of taxes in a school district in excess of the limitations otherwise provided by law. It related to school districts alone. It provided that the governing body of a school district may be authorized to call an election to vote upon the question of authorizing a levy of taxes in excess of the limitations otherwise provided by law of a specified percentage not to exceed 75 per cent. That such governing board shall be authorized to submit the question of authorizing such excess levy for the current year and not to exceed four succeeding years. It provided that the notice of election should contain statements relating to the financial status of the school district, substantially the same, as were required to be stated in a notice of election under Chapter 318, Laws 1923, and under Chapter 235, Laws 1929. It provided that the notice of election "shall give the year or years for which authorization is sought for an excess levy as well as the percentage of excess which is to be voted upon." *Nothing was required to be stated in the notice of election giving any information as to the prob-*

*able financial condition and requirements of the school district for a succeeding year or years.* The form of the ballot prescribed by Chapter 259, Laws 1943, was in a large measure based upon the ballot prescribed by the acts of 1923 and 1929 and was varied from the form of ballot prescribed by the former acts only to the extent required by the difference in the form in which the question relating to an excess levy must be submitted. In order to visualize the similarity and the dissimilarity of the two ballots, I am setting them forth in parallel column:

Chapter 318, Laws 1923, and Chapter 235 (Sec 13), Laws 1929, both provided:

"The question shall be submitted in the following form:

'Shall ............ (naming the taxing district) levy taxes for the year ........ (naming the current calendar year) which shall exceed the legal limit by .......... dollars, so that the taxes levied instead of being ......... dollars, which is the limit authorized by law, shall be ....... dollars?' "

Chapter 259, Laws 1943, provided:

"Upon the ballot the question shall be submitted in substantially the following form:

'Shall ......... school District levy taxes for the year (or years) ..........., which shall exceed the legal limit by ........ per centum, so that the taxes levied for this current year instead of being ........ Dollars, which is the limit authorized by law, shall be .......... Dollars?

Yes .............. ☐
No .............. ☐ ' "

Under the acts of 1923 and 1929 the amount of the proposed levy in excess of the legal limit was stated in the terms of dollars. The ballot made no reference to the percentage by which the proposed excess levy would exceed the legal limit. Under Chapter 259, Laws 1943, the excess of the proposed levy over the legal limit is stated in the ballot in terms of a specified percentage by which the proposed excess levy may exceed the legal limit. Under said chapter the levy in excess of the legal limit may be authorized for the current year, or it may be authorized for the current year and for as many as four succeeding years.

The notice of election is "required to give the year or years for which authorization is sought for an excess levy as well as the percentage of excess which is to be voted upon," and the ballot is required to state the year or years for which authorization is sought for an excess levy and the percentage of excess to be voted upon.

Following the form of the ballot set forth in the former laws, the form of the ballot set forth in Chapter 259, Laws 1943, also states the amount of the tax levy the board might make within the legal limit, and the amount that the proposed excess levy would authorize the legal limit to be exceeded, so that if the proposed increase is authorized, the tax levy that might be made for the current year under the proposed increase instead of being the sum which was the limit authorized by law would be a sum equal to the maximum amount that might be levied under such legal limit plus the sum that might be levied in excess of the legal limit. But these statements in the ballot are specifically restricted to the current year in which the election is held. There is no statement or even an estimate or suggestion as to the amount of levy the governing body might make within the legal limit or of the amount that the proposed excess levy will authorize the legal limit to be exceeded in any of the succeeding years. The ballot, however, shows that if the proposal to authorize an excess levy is approved there can be levied within the district in the specified year or years a tax that will exceed the legal limit by the per cent stated in the ballot. Thus, when the ballot stated that the authorization proposed would authorize a levy of taxes in Osago School District in the year 1947 "which shall exceed the legal limit by 50 percent" it would be the reasonable and natural inference from what is said that if the proposed excess levy were authorized there might be made an excess levy within said school district in 1947 of fifty per cent over the maximum levy authorized by the law in force when the levy would be made in 1947.

As has been pointed out the governing board of a school district is required to levy school district taxes "on or before the last day of July of each year," and to base such levy "upon

an itemized budget statement showing the complete expenditure program of the district for the current fiscal year and the sources of revenue from which it is to be financed." NDRC 1943, 57–1513. When authority is sought to make a levy in excess of the legal limit the governing board of a school district must pass the required resolution showing the necessity for such excess levy not later than the first day of September and the election must be held before the first day of October. At the time the election is held the governing board knows the two basic factors prescribed by law, involved in the computation of the levy, namely, (1) the legal mill limit on school district taxes for the then current year, and (2) the valuation base, i.e., the percentage of the full and true value thereof at which taxable property may be assessed. Neither of these two basic factors could be changed by legislative action interim the election and the levying of the tax. With these two factors known the governing board upon ascertainment of the net taxable valuation for the year might compute the amount of the maximum tax levy that might be made under the prescribed legal mill limit and the amount of an excess levy based on a certain specified percentage above the prescribed legal mill limit. Not so, however, with succeeding years. The basis of the taxable valuation might be changed as had been done by the legal enactments referred to above, or the basic legal mill limit might be changed as was done by Chapter 258, Laws 1943, and again by Chapter 359, Laws 1947. Thus, when an election was to be held in September, 1946, to vote upon the question of authorizing a levy in excess of the legal limit not only for the then current year but for a succeeding year, or for two, three or four succeeding years, it obviously would be impossible to state with any assurance of accuracy, and difficult to make even an intelligent guess, as to the amount of taxes that might be levied within the basic legal limit in any of the succeeding years, and what would be the amount of an excess levy of a specified percentage "over the legal limitation." And it will be noted that neither the notice nor the ballot prescribed by Chapter 259, Laws 1943, purport to show the amount of a tax levy that might be made within the basic

legal limit in any of the succeeding years or the amount by which the proposed excess levy will increase the amount of taxes that may be levied in any of the succeeding years...

The object sought to be accomplished by Chapter 259, Laws 1943, NDRC 1943, 57–16, was to make it possible for school districts to levy taxes in excess of the limitations otherwise provided by law. Chapter 259 provided that the governing board of a school district might submit to the electors of the district the question of authorizing the governing board to levy taxes "for the current year and not to exceed four succeeding years" of a certain specified percentage "over the legal limitation," and upon the approval by the specified majority of the electors of the proposal to make the excess levy that the governing board would be authorized to make such levy.

In other words on the approval at the election of a proposal to authorize an excess levy of a specified percentage over the legal limit for a designated year or years the governing board of the school district will be authorized to levy a tax in the year or years so specified, in excess of the legal limitations, of a specified percentage over the maximum amount that could have been levied in such district, if the governing board of the district had not been authorized to make the excess levy.

Originally the electors of a school district might authorize a levy in excess of the legal limit only for the current year in which the election was held. Chapter 318, Laws 1923. But experience had shown that it was necessary or at least desirable that the statute be changed so as to provide that authority might be conferred on the governing board of a school district to make an excess levy not only for the current year in which the election is held but for up to four succeeding years, and accordingly the statute was changed so as to make such provision. Laws 1943, Chapter 259. The approval by the electors of a proposal to authorize the governing board to make an excess levy of a specified percentage over the legal limit does not constitute a levy; it constitutes authorization to the governing board to make an excess levy of a specified percentage over the maximum amount the board could have levied if there had been no authorization to levy a tax in excess of the legal limit.

An approval of the proposal to authorize an excess levy does not change the basic, legal limitations. It authorizes the governing board to make an excess levy,—a levy in excess of the limitations otherwise provided by law. NDRC 1943, 57–1602. The excess levy is specifically predicated upon the maximum amount of levy that could be made within the prescribed basic legal limit. Basically, the question submitted to the electors at an election for authorization to make an excess levy is whether the governing board in a designated year or years shall be authorized to make a levy which will be an increase of a specified percentage over the legal limitations,—a tax in excess of the legal limit and which the governing board could not have levied unless authority to do so had been specifically conferred upon it by the voters at an election held for the purpose of voting upon the question of authorizing the excess levy.

It has been the policy of this state throughout its entire history to prescribe by statute a basic limit on levies by school districts. Laws 1890, Chapter 62, Sec. 185; Laws 1947, Chapter 359. See, also, ND Const, Sec. 130. It has also been the consistent policy of the State throughout its entire history to require that such taxes be levied each year *"in specific amounts* of money." NDRC 1943, 57–1501; Laws 1890, Chapter 132, Sec. 48. The laws of the State provide that the levy by the school district must "be based upon an itemized budget statement which shall show the complete expenditure program for the current year and the sources of the revenue from which it is to be financed," NDRC 1943, 57–1513; and that the levy so made shall be certified to the county auditor immediately following the making of the levy or within ten days thereafter. NDRC 1943, 57–1532. That the rate of taxes levied by a school district "shall be calculated and fixed by the county auditor within the limitations prescribed by statute" and that if any school district "shall levy a greater amount than the prescribed maximum legal rate of levy will produce, the county auditor shall extend only such amount of tax as the prescribed maximum legal rate of levy will produce. The rate shall be based and computed on the aggregate net assessed valuation of taxable property in the municipality or district levying the tax. The rate of all taxes shall be calculated by

the county auditor in mills, tenths, and hundredths of mills." NDRC 1943, 57–1502.

Our laws further provide that when a school district has been authorized to levy a tax in excess of the legal limit pursuant to an election as provided by Chapter 57–16, NDRC 1943, "the election board shall certify the result of such election to the county auditor within ten days after such election," and "if the question proposed carried by the required majority, the county auditor shall extend such excess levy upon the tax lists ·of the school district." NDRC 1943, 57–1607.

The statute (Laws 1943, Chapter 259) providing for authorization of the governing board of a school district to make an excess levy in a certain specified year or years is wholly prospective in character. It looks solely to the future and to tax levies to be made in the future and after elections held under the law have authorized such levies to be made. It provides for making excess levies in the year in which the election is held and in certain specified future years. The excess levy authorized to be made in any year would be predicated upon the amount of the maximum levy that could have been made if no excess levy had been authorized. In the absence of any declaration to the contrary it must be presumed that it was the intention of the lawmakers that the legal limit of the normal tax levy in all school districts would be the one prescribed by the laws in force when the levy is made. That this would be so in all school districts,— as well as those that had authorized increased levies in certain years as to those that had not. In short, that it was the intention that the legal limit of the normal levy would be based upon the net taxable valuation and the mill rate as prescribed by the laws in force when the levy is made, and that the excess levy would be predicated upon the maximum levy that might be made under the legal limit, and that such excess levy would be computed by the application of the authorized percentage of increase to the amount of the maximum levy that could be made within the legal limit under then existing laws. There was no provision or intimation in said Chapter 259, Laws 1943, that the legal limit on which the excess levy should be computed in any year should be the legal limit fixed by the laws in force when the election is

held. If the lawmakers had had any such intention they doubt-less would have said so.

Throughout the whole history of the State there has been at any one time only one basic, legal mill limit applicable to tax levies in school districts. There has been only one basic, legal mill limit to be applied by the county auditor in the computation of taxes and determining the maximum amount that may be levied within a district and extended by the county auditor upon the tax records in any year, namely, the limit prescribed by the law in force at the time the levy is made. Chapter 259, Laws 1943, evidences no intention to interfere with or change this practice but rather the contrary. The provision that the proposed excess levy is to be stated and that such levy is to be computed at a "specified percentage" over "the legal limitation," that is, at a specified percentage over the maximum amount that could have been levied within the district if no such excess levy had been authorized, indicates that the proposed excess levy in any and all of the specified years will be predicated upon the maximum amount that might have been levied under the law at the time the levy is made, if no excess levy had been authorized. When the electors of a school district at an election in 1946 authorized the governing board of the district to make an excess levy in 1946 and also in 1947 of twenty-five or fifty per cent over the legal limit, as to the levy to be made in 1947 the legal limit referred to was the basic legal limit that would be prescribed by the law in force in July, 1947, when the levy would be made. When the electors of Osago School District at the election held in September, 1946, authorized the levy of taxes for the year 1947 that might exceed the legal limit by fifty per cent, they in effect said to the governing board of the district, when you levy taxes in 1947 you are authorized to make an excess levy, and levy taxes in excess of the legal limit by up to fifty per cent above the limitations otherwise provided by the laws in force when the levy is made for 1947.

The construction contended for by the plaintiff and adopted in the opinion prepared by Chief Justice Morris would, in effect, amend the ballot specified in the statute by inserting therein the

words which I have italicized, or words of similar import, so as to make the ballot read substantially as follows:

> "Shall ............... school District levy taxes for the year (or years) .............. which shall exceed the legal limit *that is prescribed by the law in force on the date this election is held* by .......... per centum, so that the taxes levied for this current year instead of being .......... Dollars, which is the limit authorized by law, shall be ............ Dollars?
>
> Yes ............... □
> No ............... □"

This is not construction of the language contained in the ballot but a radical amendment of the ballot. The ballot prescribed by the statute does not state or indicate that the legal limit referred to therein, and which may be exceeded by a proposed excess tax levy in a certain specified future year is other than the legal limit upon tax levies that will be prescribed by the law in force at the time the tax levy is made. If the legislature had intended any such extraordinary and unprecedented action as to require that tax levies to be made in certain future years must be predicated upon the basic legal limit prescribed by law in force in years prior to the time the levy is made, even though such law has been repealed and abrogated by specific legislative enactment prescribing another basic legal limit, the legislature, doubtless, would have said so. In no instance in the history of the State has any such rule of taxation been adopted, and so far as I can find, no such plan or rule has been adopted in any other jurisdiction. In fact, appellant's counsel, in their brief concede that they have been unable to find any decision which is similar on the facts and they might have gone farther and conceded that they had been unable to find any instance where such rule has been adopted, or even suggested, either in this state or in any other state. The obvious purpose of Chapter 259, Laws 1943, was to make it possible to authorize the governing board of a school district to make a tax levy *in excess* of the basic legal limitations. *The purpose of an authorization to the governing board of a school district to make an excess levy with-*

*in such district in any specified year was to empower the governing board to make a levy in the year specified up to the maximum of a specific percentage in excess of the largest levy the board could have made if no such authority had been granted.*

Chapter 359, Laws 1947, is prospective in operation. It looks forward. It prescribes a rule for the future. It prescribes the basic legal mill limit on tax levies in all school districts after it became effective as a law on July 1, 1946, and was intended to apply to all tax levies made by the governing boards of school districts after that date. Black on Interpretation of Laws, p 247; Crawford, Statutory Construction, Sec. 77, p 109. It superseded NDRC 1943, 57–14, and the provisions of said Chapter 359, Laws 1947, became a part of said section 57–1514 as if said section 57–1514 had originally been enacted in the form as amended by said Chapter 359, Laws 1947. Crawford, Statutory Construction, Sec. 78, pp 110–111; Black on Interpretation of Laws, Sec. 131, p 358; 1 Sutherland, Statutory Construction, 3rd ed, Sec. 1935, p 431; U. S. v. La France, supra; State ex rel. Gebhardt et al. v. Superior Court for King County, supra. Nothing is said in Chapter 359 to indicate any intention that the basic legal mill limit prescribed therein should not apply to all tax levies in school districts as long as that law remains in effect. It provides that the aggregate amount levied by "any school district giving four years of standard high school work may levy taxes not to exceed 36 mills." Said Chapter 359, Laws 1947, took effect as a law July 1, 1947. The obvious purpose and effect of said Chapter 359 was to wholly abrogate the former law and to substitute in place of the legal limit prescribed by NDRC 1943, 57–1514, the legal limit stated in said Chapter 359. It was the legislative intent that the limit prescribed by said Chapter 359 should be the only basic legal mill limit that would apply to all school district tax levies made after July 1, 1947. The lawmakers knew that said Chapter 359 would take effect on July 1, 1947, and that after it took effect it would be the only law prescribing the basic, legal mill limit on tax levies in school districts in 1947; that NDRC 1943, 57–1514 would be wholly abrogated and would have no more application to any tax levy made after July 1, 1947, than if it had never existed.

Reference has been made above to the conditions which confronted the lawmakers at the time of the enactment of Chapter 359, Laws 1947, with respect to tax levies in school districts and the need of school districts for increased revenues, which needs had been greatly augmented by the reduction of the taxable valuation of property from seventy-five to fifty per cent of the full and true value thereof as a result of the repeal at the referendum election on June 25, 1946, of Chapter 317, Laws 1945, thereby reducing the revenue from the general property tax to a school district by some 33⅓ per cent. That a large number of school districts, after such reduction, had found it necessary to conduct elections in order to authorize the governing boards therein to make excess levies. Obviously, such districts probably would be in greater need of having the basic mill limit increased than would districts which had not found this to be necessary. As has been shown the law, Chapter 359, was introduced by the Legislative Research Committee and the chairman of that Committee. It was introduced early in the legislative session. It was given more than usual consideration. It was considered and recommended for passage by two separate committees in the House of Representatives—the Committee on Finance and Taxation and the Committee on Education. The records of the Legislative Assembly disclose that not a single amendment was offered thereto after the bill had been introduced. Such records also disclose that the act was passed by the House of Representatives with only a single dissenting vote (House Journal 1947. p 467), and that it was passed by the Senate by a unanimous vote (Senate Journal 1947, p 616). This is some indication of the feeling on the part of the lawmakers as to the necessity for the legislation and for the elimination of the legal limitations prescribed by the former law and the adoption of the new limitations which would enable all school districts to make higher levies. As said, there is nothing in the statute to indicate that there was any intention on the part of the lawmakers that this statute should be anything other than what it purports to be,— the only law fixing a maximum legal mill limit on tax levies in school districts from the time it took effect.

It has been argued that the statements in the ballot relating

to the taxes for the current year were in effect representations to the electors that the amount of the taxes that might be levied for the succeeding year would be the same or substantially the same; that the statements in the ballot in the election in Osago School District on September 24, 1946, that a specific sum of money stated in the ballot as "the limit authorized by law" in 1946, and a specific sum of money stated as the amount of taxes that could be levied in 1946 if there were added to the amount of the levy of the legal limit the proceeds of a levy of fifty per cent in excess of the legal limit constituted a representation to the electors that these amounts would be substantially the same in 1947. The ballot made no such representation. The ballot expressly referred to the levy in 1946. It made no statement as to what the amounts would be in 1947. The only representation made was that the excess levy authorized to be made in 1947 would be up to fifty per cent over the legal limit. In other words, that when the tax levy was made in the school district in 1947 the governing board might levy taxes fifty per cent in excess of the then legal limit. There was not the slightest representation as to what *the amount* of the 1947 levy would be.

The electors knew that the amount of the levy in any year would depend upon the conditions as they existed and the law in force when the levy was made. They knew that the basic legal mill limit and the base on which the taxable valuation of property was fixed would depend upon the law in force when the levy was made. Most of the electors had participated in the referendum election in June 1946 and were familiar with the result of that election and with the increased need for additional tax revenue for school districts resulting from the decrease of the base of valuation on which property might be taxed. The electors of Osago School District knew that after the result of that election became known the governing board of Osago School District had passed a resolution declaring that it was necessary to levy taxes in the years 1946 and 1947 which should exceed the legal limit by fifty per cent and had called the election for the purpose of submitting the question of authorizing such excess levy to the electors of the district. The electors of Aneta Special School District knew that the governing board of that

district had passed a similar resolution seeking authority to make a levy in excess of the legal limit by twenty-five per cent in the years 1946, 1947 and 1948, and had called the election for the purpose of submitting the question of authorizing such excess levy to the electors of the district. The electors knew that the regular session of the legislature would convene in January 1947 and that at such session the legislature would have power to enact such legislation as they deemed necessary to increase the amount of taxes which school districts might levy and that the legislature might increase the basic legal mill limit or might change the base of valuation at which the property might be taxed as they had done at former times.

It is said that the action of the officers of the school districts in levying the tax which they levied in 1947 indicates "utter disregard of the intention of the voters." This assertion is wholly unwarranted. There is nothing to indicate that the officers of Osago and Aneta school districts did not act in conformity with the intention of the electors and sought in the very best of faith to carry out the duties of their office in conformity with the law. There is no claim that the levy which they made was extravagant or that there was not a real need for the funds which they sought to procure for their districts by the levy which they made. Not a single elector of either of the districts has challenged the validity of the levy or the correctness of the construction which the officers placed upon the law. The construction which the officers of the school districts placed upon the language contained in the statute and the ballot was the construction which had been placed upon it by the Superintendent of Public Instruction and by the Attorney General of the State in an official opinion. See Great Northern v. Mustad, 76 ND 84, 33 NW2d 436. It is the same construction that was placed upon it by the officers in all school districts and by public officials generally throughout the State and the construction that had been placed upon a similar measure in former years. So far as has been called to our attention the construction which the governing boards of Osago School District and Aneta Special School District placed upon the statute has not been challenged by any elector in any of the school districts where similar situations

were presented. The electors have paid their taxes without protest. The only parties that have questioned the levies made by the school districts in accordance with the construction placed upon the law by the Department of Education, the Attorney General, and the governing boards of Osago and Aneta school districts are foreign railroad corporations. The very fact that no attack has been made on the levies by any of the hundreds of electors affected by the levies is itself some indication that they placed the same construction upon the law as was placed upon it by the State Superintendent of Public Instruction, by the Attorney General, and by the school officers, and by the county auditors, who, in the performance of their duties, have extended the levies.

There is no contention that the governing boards had unlimited discretion as to the amount they might levy. On the contrary it is conceded that the amount of taxes which the governing board of any school district in this state might levy for the year 1947 was limited by the laws prescribing such limit, in force when the taxes were levied for the year 1947. Chapter 359, Laws 1947,—the statute which prescribed the basic legal mill limit of tax levies in school districts,—took effect and became the law of the State on July 1, 1947. This was the only law in existence fixing the basic legal mill limitation on school district levies when such levies were required to be made in 1947. The basic legal mill limit fixed by said Chapter 359 on tax levies in school districts such as the Osago School District and the Aneta Special School District, "giving four years of standard high school work," was thirty-six mills on the dollar of the net taxable assessed valuation in the district. The governing boards of the two school districts had been authorized, in the manner provided by NDRC 1943, 57–16; Chapter 259, Laws 1943, to make an excess levy and levy taxes up to a specified percentage over the legal limitation. Thus, the governing board of Osago School District had been authorized to levy taxes for the year 1947 which might exceed the legal limit by fifty per cent. The maximum amount which the board could levy was definitely limited by the law. The laws of the State provide that school district taxes shall be levied in "specific amounts of money" (NDRC 1943, 57–

1501), that "taxes for school district purposes shall be based upon an itemized budget statement which shall show the complete expenditure program of the district for the current year and the sources of the revenue from which it is to be financed," and that the amount to be levied by any school district "shall be computed by deducting from the amount of estimated expenditures for the current fiscal year as finally determined," certain specified available assets. NDRC 1943, 57–1501. These provisions were applicable to all levies of taxes for school district purposes when the levies were made in 1947. There is no contention that the governing board of either of the districts failed to comply with any of the provisions of law relating to the levy of taxes, other than that the plaintiff contends that the legal mill limit applicable to the levy was the legal mill limit in force when the election was held in September 1946 which was twenty-two mills on the dollar of the net taxable assessed valuation of the district; and the defendant contends that the legal mill limit applicable to the levy made in 1947 for the year 1947 was the legal mill limit prescribed by Chapter 359, Laws 1947, namely, thirty-six mills on the dollar of the net taxable assessed valuation in the district.

It is said that "it is significant that when it increased the levy limit, the legislature made no change in the law providing the procedure for increasing the limit by a vote of the electors." The fact that the legislature made no change in the law prescribing the procedure for authorizing the governing board of a school district to make an excess levy did not signify any assumption or intention on the part of the legislature that the legal mill limit prescribed by Chapter 359, Laws 1947, should not be applicable to the computation of tax levies in school districts that had duly authorized excess levies pursuant to proceedings had and elections held under Chapter 57–16, NDRC 1943, before said Chapter 359 was enacted. Rather, the significance is to the contrary. The statute (NDRC 1943, 57–16) prescribing the procedure for authorizing the governing board of a school district to "levy taxes in such school district in excess of the limitations otherwise provided by law" did not affect or change the basic legal mill limit of tax levy in a school district. It was an enactment separate

654

from the statute prescribing such basic legal mill limit, and provided for an excess levy,—a levy in excess of the basic legal mill limit "otherwise provided by law"; and under its provisions the excess levy must be predicated upon the basic legal limit provided by law. In the enactment of Chapter 359, Laws 1947, the legislature was not concerned with a levy in excess of the legal limit, it was concerned alone with prescribing the basic legal mill limit on tax levies in school districts. The legislature was familiar with the law providing for an excess levy. They knew that excess levies had been authorized in a large number of school districts in the State, many under elections held in 1946 and authorizing excess levies in 1946 and succeeding years,—in some instances up to and including 1950. The legislature made no change in the law providing for an excess levy. They recognized the necessity of continuing such law in force without change, notwithstanding the increased basic mill limit provided in said Chapter 359. By said Chapter 359 the legislature wholly abrogated NDRC 1943, Sec. 57–1514, and the mill rate limit prescribed thereby and substituted in place thereof the mill rate limit prescribed by said Chapter 359. The former law ceased to exist for any purpose when said Chapter 359 took effect, and the legislature obviously assumed and intended that when levies were made in school districts after said Chapter 359 became effective that the basic legal mill limit applicable in the computation of tax levies in all school districts should be the one prescribed by that law. If the lawmakers had intended anything so anomalous and unprecedented as to provide that in the computation of tax levies made after said Chapter 359 took effect on July 1, 1947, the legal mill limit prescribed by that statute should be applied in the computation of tax levies only in school districts that had not authorized an excess levy and in districts that had authorized an excess levy in an election held after July 1, 1947; but that in all school districts in which excess levies had been authorized for 1947, or for 1947 and subsequent years, at an election held prior to July 1, 1947, the legal mill limit that should be applied in the computation of the tax levy for 1947 was the legal mill limit prescribed by Section 57–1514, NDRC 1943, the law in effect on the date the election authorizing the excess levy was held—(which

said section had ceased to exist, and had been superseded by said Chapter 359, Laws 1947,)—they doubtless would have said so.

According to the stipulation of facts, Osago School District had a total taxable valuation in 1947 of $255,397.00. It levied taxes in 1947 aggregating $12,800. Under the provisions of Chapter 359, Laws 1947, a school district giving four years of standard high school work might levy taxes not to exceed thirty-six mills. Hence, Osago School District might levy a tax for 1947 of $9,794.39 within the limitations provided by law in force in July 1947. But the governing board of Osago School District had been duly authorized pursuant to an election held September 24, 1946, to levy a tax in 1947 in excess of the limitations provided by law up to fifty per cent of the maximum amount that could be levied within the legal limit, or $4,897.20. Therefore, the governing board of Osago School District might make a maximum tax levy in 1947 of $14,691.59. It levied a tax based upon its budget statement of $12,800. This was well within the limit which the governing board of Osago School District was authorized to levy for 1947. The same is true of the levy made by Aneta Special School District.

I am authorized to state that Judge Grimson concurs in the views expressed in this dissenting opinion.

GRIMSON, J., concurs.